IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 2000 SESSION HEARD AT JACKSON

## STATE OF TENNESSEE v. EDWARD T. FLYE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-B-1307 J. Randall Wyatt, Jr.**

---

**No. M1999-01183-CCA-R3-CD - Filed July 28, 2000**

---

The defendant, Edward T. Flye, challenges the sufficiency of the evidence used to convict him of aggravated burglary and evading arrest. Because the evidence is adequate to support the convictions, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Edward T. Flye.

Paul G. Summers, Attorney General and Reporter, Lucian D. Geise, Assistant Attorney General, and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Edward T. Flye, was convicted of aggravated burglary, evading arrest, and criminal impersonation. The trial court sentenced the defendant as a career offender to 15 years for aggravated burglary, 12 years for evading arrest, and six months for criminal impersonation. The sentences are to be served concurrently. In this appeal of right, the defendant contends that the evidence is insufficient to support either the aggravated burglary or the evading arrest convictions. Because the evidence is adequate to support each conviction, the judgment is affirmed.

On the morning of February 25, 1998, Ann Doster, who lived on Rockdale Avenue in Nashville, saw an unfamiliar car in the driveway of her neighbor, Tad Sekeres, who had already left for work. Ms. Doster observed a young black male wearing dark blue pants and a blue striped shirt emerge from the front of the Sekeres residence, step into a tan Dodge Omni hatchback and drive away. He wore black leather gloves. When the same man returned to the Sekeres residence a few minutes later, Ms. Doster dialed 911. As she talked to the dispatcher, she heard thumping noises from the Sekeres residence.

Officer Thales Finchum was dispatched to the scene. When he arrived at the Sekeres residence, he observed a vehicle in the driveway with the engine engaged. Officer Finchum blocked the driveway with his patrol car and then armed himself with a shotgun when the defendant appeared between the glass storm door and the interior door of the Sekeres residence. The interior door, made of wood, was damaged with a hole in one of the door panels. Officer Finchum, who described the suspect as having a horizontally striped shirt and dark blue pants, yelled, "Hold it," and, "Don't do it." Nevertheless, the suspect ran to the Dodge Omni and accelerated the vehicle towards the officer, who jumped out of the way and then fired a shot over the top of the fleeing vehicle. At trial, the officer testified that he had first aimed at the suspect's chest as he sat in the driver's seat of his vehicle facing the officer. Because the safety had not been released, the shotgun did not discharge.

Officer Finchum followed the suspect, who struck a neighbor's mailbox and nearly hit another occupied vehicle as he sped away from the scene. The officer lost sight of the vehicle but Officer Charles Dorminey, who received a description of the suspect, saw a tan Omni speeding along Lealand Avenue. By the time Officer Dorminey caught up, the vehicle had been abandoned on Knox Avenue. The Omni was still warm when he arrived.

Officer William Turbeville, who had heard the radio broadcasts from Officers Finchum and Dorminey, saw the defendant as he walked down Vaulx Lane, which was near the abandoned vehicle. The defendant matched the description provided by Ms. Doster and Officer Finchum, and he wore a horizontally striped shirt and dark blue pants. His hair was in corn rows. When questioned, the defendant identified himself as "David Williams" and contended that he did not have any form of identification. The defendant was transported back to the Sekeres residence where both Ms. Doster and Officer Finchum identified him as the burglar. The defendant had a key ring in his possession with the name "Carla" on it. When the Dodge Omni was searched, a set of Chrysler keys was found in the back seat.

Tad Sekeres returned to his residence after being notified by police of the burglary. He observed that a panel of the wooden interior door was missing, that the door had been kicked, and that the dead bolt lock had been bent, preventing him from opening the door with his key. Sekeres described the hole in the front door as large enough for someone to enter. While inside the residence, Sekeres noticed that the curtains in his front room and at the back door had been moved, although nothing appeared to be missing except the front door panel.

Police found fingerprints on the outside driver's door window, the rear view mirror, and the driver's door of the Dodge Omni. A soft drink can was found inside the vehicle. A finger print analysis indicated that each of the prints belonged to the defendant.

At trial, the defendant testified that he had encountered an acquaintance, Reginald Crump, on the morning of the burglary, and that Crump had asked for transportation to cash an income tax refund check. The defendant contended that, along the way, Crump asked to be dropped off at a friend's house to acquire some marijuana. He explained that he circled the block while Crump went inside. The defendant stated that when he returned, he pulled in the driveway, went to the door of the house and knocked on the door just as he saw Crump "bent over running over from the side of

the house."  The defendant claimed that as the two men tried to drive away, they saw the police car blocking the driveway.  The defendant conceded that he heard a "boom" as he drove away but thought he had a flat tire.  He insisted that he was unaware that he was being chased by police.  The defendant testified that he stopped, let Crump out of the vehicle, and eventually drove to Knox Avenue where he parked his car to visit a friend.  The defendant claimed that he then called his girlfriend Carla and instructed her to say that his car had been stolen in case anyone asked.

The defendant acknowledged that, when stopped, he gave the police the name of David Williams.  The defendant insisted that he did not see a hole in the Sekeres door and that he did not open the glass exterior door.  He denied that he kicked the interior, wooden door of the Sekeres residence and denied that he had crawled through the hole in the door.  He also contended that he had already driven out of the driveway before he noticed Officer Finchum.

The defendant contends that the evidence is insufficient because Ms. Doster, during the critical time she observed the defendant, was distracted by her call to the 911 operator.  He points out that Ms. Doster was unable to see the front door of the Sekeres house at anytime and that the first time she saw the suspect, he was wearing sunglasses, while the second time, he was not.  The defendant also argues that the evidence is insufficient because his finger prints were not found inside the Sekeres house.  The defendant asserts that there was insufficient evidence to establish that anyone had crawled through the front door of the Sekeres residence.

As to the offense of evading arrest, the defendant argues that Officer Finchum never stated that he was under arrest and that, in the alternative, no one was endangered by his attempt to evade the arrest.  He points out that the only evidence of endangerment is Officer Finchum's testimony that he almost hit another car while turning onto Leland Avenue.  He argues that Officer Finchum's testimony is not credible because Officer Finchum, who was on foot, could not run the 200 to 300 feet necessary in order to view the defendant's vehicle turning onto Leland Avenue.

In order to establish an aggravated burglary, the state must prove that the defendant entered the habitation of the victim without consent and with the intent to commit a theft.  Tenn. Code Ann. §§ 39-14-401, -402, -403.  In order to establish the offense of evading arrest, the state must prove that the defendant, "while operating a motor vehicle on any street, road, alley, or highway" intentionally fled or attempted to elude an officer after receiving a signal to stop and that the defendant created "a risk of death or injury to innocent bystanders or other third parties."  Tenn. Code Ann. § 39-16-603(b)(1), (3).  An evasion of arrest involving a risk of death or injury to third parties is a Class D felony.  Id.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978).  The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact.  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  In a criminal action, a conviction will be set aside only where the reviewing court finds that the "evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  Tenn. R. App. P.

13(e).

Initially, both Ms. Doster and Officer Finchum identified the defendant as the suspect who fled from the Sekeres residence. Officer Finchum, after blocking the path of the defendant's vehicle, testified that the defendant "just like magic . . . appeared in between the glass door and . . . the other door." Testimony established that there was a hole in the interior wooden door large enough for one to either enter or exit the residence. Officer Finchum, who was armed with a shotgun, directed the defendant to "hold it" and, when the defendant failed to comply, "don't do it." Officer Finchum fired a gunshot at the defendant's vehicle as he drove away from the scene and saw that the defendant barely missed another vehicle as he sped onto another street.

The jury in this case chose to accredit the testimony of the prosecution witnesses. That was their prerogative. The state proved the essential elements of both aggravated burglary and evading arrest in a motor vehicle with the risk of injury to an innocent bystander. The evidence more than satisfied the standard prescribed in Jackson v. Virginia, 443 U.S. 307 (1979).

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE