IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2005

## STATE OF TENNESSEE v. EDDIE HATCHETT

**Appeal from the Criminal Court for Shelby County**
**No. 03-05044       W. Otis Higgs, Judge**

_____

**No. W2004-01073-CCA-R3-CD  - Filed July 21, 2005**

_____

A Shelby County Criminal Court jury convicted the defendant, Eddie Hatchett, of aggravated assault, a Class C felony, and the trial court sentenced him as a Range II, multiple offender to eight years in the Department of Correction.  The defendant appeals, claiming the evidence is insufficient because the state failed to negate his claim of self-defense.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Robert Wilson Jones, District Public Defender, and Tony N. Brayton and Robert C. Felkner, Assistant Public Defenders, for the appellant, Eddie Hatchett.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Michael Zak, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's shooting Tony Potts.  At the trial, Tony Potts, the victim, testified that on April 27, 2003, he was celebrating his thirtieth birthday with his girlfriend, Selena Hatchett, who is also the defendant's sister.  He said that he and Ms. Hatchett left the party around 3:00 a.m.  He said that they went to her aunt's apartment where they found the defendant.  The victim said he told the defendant to leave because the police had previously warned the defendant to stay away from the victim and Ms. Hatchett and warned the victim and Ms. Hatchett to stay away from the defendant.  He said he followed the defendant out the door and started arguing with him. He said that he and the defendant were insulting and cursing each other and that the defendant threatened to kill him.  He said he followed the defendant to the defendant's apartment, which was in the same complex.  He said that while the defendant was still outside, he returned to his girlfriend, retrieved a metal crutch, returned to the defendant's apartment, and began striking the door.  He said

that after he hit the door a couple of times, he stopped, told the defendant, "you ain't worth me going to jail," and left. He said he returned to his girlfriend's aunt's apartment and began talking with his girlfriend by the front door. He said that the defendant "come out the door with a rifle, stood on his steps, raised it up and shot me." He said that after he heard the gunshot, he saw a lot of blood on his chest and told his girlfriend that the defendant had shot him. He said the bullet entered and exited his jaw. He said that when the defendant shot him, the distance between himself and the defendant was about three car lengths.

On cross-examination, the victim testified that he is 6'3" tall and that he weighs 245 pounds. He acknowledged that when he was at the party, he had been drinking and smoking marijuana and that if he had been given a "breathalizer," he would have failed. The victim repeated that he was standing in the door of his girlfriend's aunt's apartment when the defendant shot him.

Selena Hatchett testified that she is the victim's girlfriend and the defendant's sister. She said she and the victim were living in her aunt's apartment when the event in question occurred. She said that on the night in question, she and the victim celebrated his birthday. She said everyone at the party was drinking and smoking marijuana. She said that when they returned from the party, they found the defendant in her aunt's apartment. She said the victim told the defendant to leave because the police had told the victim and her only a few days before to have no contact with the defendant. She said that the victim followed the defendant when he left the apartment and that "there was yelling and screaming, calling each other names and stuff." She said the defendant told the victim he was going to kill him, prompting the victim to retreat to the apartment to get the crutch. She said that after retrieving the crutch, the victim went to the defendant's apartment and struck the defendant's door with the crutch twice. She said the victim then came back to her aunt's apartment and turned around in the doorway. She said the defendant then shot the victim. She said that after the gunshot, she tried to get the gun away from the defendant but that the defendant pushed her down and returned to his apartment.

On cross-examination, Ms. Hatchett admitted that the defendant's evicting her and the victim from his apartment made the victim very upset with the defendant. She said that she told the victim to leave the defendant alone and not argue with him but that the victim would not listen to her. Ms. Hatchett acknowledged that the victim's striking the door with the crutch made a loud noise. She acknowledged that she and the victim still had keys to the defendant's apartment which they did not return when the defendant evicted them. She also acknowledged not telling the police the defendant had threatened to kill the victim.

Memphis Fire Department Officer Angelo Deshan Lamar testified that he was called to the scene on the night in question. He said that he was a trained Emergency Medical Technician and that when he arrived on the scene, the victim was lying on the front porch, covered by a blanket. He said the defendant had been shot in the head.

Memphis Police Department Officer Trenis Swims testified that he and his partner responded to a "shooting call" at the victim's address. He said that when he arrived on the scene, he requested

a paramedic unit, secured the scene, and went to the defendant's apartment. He said that after a few minutes, the defendant opened the door and that he arrested the defendant. Officer Swims said that while he was doing paperwork, the defendant talked "about how they was into it previously and how he got tired of [the victim] messing with him blabbing on about . . . stuff he just got tired of it. He said I told ya'll if ya'll didn't do something with him that . . . something like this was going to happen."

Officer Swims testified that he had been called to the defendant's apartment before to break up an altercation between the defendant, the victim, and Ms. Hatchett. He said that on that occasion, the defendant was loud and disorderly but that the victim and Ms. Hatchett were very cooperative. On cross-examination, Officer Swims acknowledged that on the previous call, he did not arrest the defendant. He admitted that Ms. Hatchett never told him that the defendant had pointed the gun at her or struck her and that if she had said so, he would have charged the defendant with additional crimes. Memphis Police Department Officer Kennedy Hall's testimony was similar to that of Officer Swims.

Memphis Police Department Officer Carson testified that he questioned the defendant as an investigator for the Felony Response Unit. He said the defendant said he shot the victim because he knew the victim would return. He said that he asked the defendant what the victim was doing when he was shot and that the defendant responded that the victim was running away from him.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant's sole issue on appeal is the sufficiency of the convicting evidence. He claims that the state failed to overcome its burden of negating his claim of self-defense. The state contends the evidence is sufficient because the victim had retreated to the doorway of his girlfriend's aunt's apartment before the defendant shot him, rendering the defendant's reliance on Tennessee's self-defense statute misplaced. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In Tennessee, questions about witness credibility are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

In order to sustain a conviction for aggravated assault, the state had to prove beyond a reasonable doubt that the defendant intentionally, knowingly, or recklessly caused serious bodily injury to the victim. See T.C.A. § 39-13-101, -102. However, Tennessee's self-defense statute provides,

(a) A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

T.C.A. § 39-11-611(a).

Both the victim and Ms. Hatchett testified that the victim had retreated to Ms. Hatchett's aunt's doorway before the defendant returned from inside his apartment with his rifle, raised it, and shot the victim. Officer Carson testified the defendant admitted to him that the victim was running away when he shot him. The evidence was sufficient to overcome the defendant's claim of self-defense.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE