IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2011

**STATE OF TENNESSEE v. GEORGE TUCKER**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-02480     Lee V. Coffee, Judge**

**No. W2010-01270-CCA-R3-CD  - Filed August 17, 2011**

A Shelby County Criminal Court jury convicted the appellant, George Tucker, of theft of property valued one thousand dollars or more but less than ten thousand dollars, a Class D felony, and the trial court sentenced him as a Range III, career offender to twelve years in confinement.  On appeal, the appellant claims that the evidence is insufficient to support the conviction.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JERRY L. SMITH, and ALAN E. GLENN, JJ., joined.

Barry W. Kuhn and Stephen C. Bush (on appeal) and Mary Kathryn Kent and Nick Cloud (at trial), Memphis, Tennessee, for the appellant, George Tucker.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kate Edmands, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

This case relates to the theft of Christopher Myers's pickup truck on July 25, 2008. Antonio Suggs testified that he had known the appellant for ten to twelve years.  In July 2008, the appellant lived on Faxon Avenue in Memphis, which was three or four blocks from Suggs's house on Snowden Avenue.  Suggs said he saw the appellant almost every day, "walking back and forth" in the neighborhood.  On the afternoon of July 25, 2008, Suggs was

driving his white 1994 Chevrolet Safari van on Bellevue Boulevard. As he approached the Poplar Avenue intersection, he heard a horn blowing, looked in his rearview mirror, and saw a pickup truck, which turned out to be stolen, traveling toward him at a high rate of speed. Suggs saw the appellant driving the truck, and Suggs continued traveling on Bellevue. When he got to the intersection with Jefferson Avenue, he moved into the right turn lane and stopped for the red traffic light. While he was waiting for the red light, the stolen truck ran into the back of his van and pushed it twelve to thirteen feet into the intersection. A small pickup truck arrived at the scene, but Suggs did not pay much attention to it and did not notice whether the small truck pulled to the left or the right of the stolen truck. Suggs said that he got out to look at his van and that the "whole back right side" was damaged. The appellant got out of the stolen truck, and a man got out of the small pickup truck and hit the appellant on the back of the head with a shovel. Suggs said that after the man hit the appellant, the appellant "took off running towards the VA Hospital."

Suggs testified that the appellant did not have a cane on July 25 and that he had never seen the appellant walk with a cane. When asked if the appellant had any problem running on July 25, Suggs said, "You would have thought it was the Olympics." Suggs got back into his van, followed the appellant, and confronted him at a bus stop in front of the hospital. Suggs asked the appellant why he had hit Suggs's van, and the appellant said he would pay Suggs. Then the appellant got onto a city bus and left the scene. Suggs acknowledged having a prior conviction for reckless endangerment.

On cross-examination, Suggs testified that while his van was stopped at the Bellevue/Jefferson intersection, the stolen truck "squeezed on my passenger side." The truck did not hit anything but Suggs's van. Suggs got out of his van and saw the small pickup truck behind the stolen truck. He said that one man was driving the small truck and that a second man was in the bed of "the other truck." He said that the second man, who turned out to be the owner of the stolen truck, got out of the truck bed and "was getting in his door." Then the second man hit the appellant on the head with the shovel, and the appellant ran one-half to three-fourths of a mile on Jefferson Avenue to the bus stop. After Suggs confronted the appellant at the bus stop and the appellant left the scene, Suggs drove toward his home. He said he saw a police car and "the other two guys in the yard where the [truck] was stolen from." Suggs stopped, told the police what had happened, and told the police that the appellant had been driving the stolen truck. Suggs acknowledged that at the appellant's preliminary hearing, he testified that the stolen truck collided with his van, that the stolen truck did not stop, and that the small pickup truck also "kept going." He said his trial testimony, in which he said the stolen truck hit his van and stopped, was correct. He also acknowledged that he did not mention at the hearing that the second man hit the appellant on the head with a shovel. He said he did not remember that fact at the time of the hearing.

On redirect examination, Suggs acknowledged that his preliminary hearing testimony was "substantially similar" to his trial testimony. He said he did not have a reason to lie in this case.

Christopher Myers testified that he was employed as a cable installer for The Cable Guys and used his personal vehicle, a black 1996 GMC Sierra pickup truck, for his work. Myers paid $6,500 for the truck and made about $2,500 worth of improvements to it. He estimated that the value of the truck was $5,500 at the time of this incident. On July 25, 2008, Myers drove to a home on North Parkway in order to deliver a modem to James Walton, who also worked for The Cable Guys and was installing internet service in the home. When Myers arrived, he planned to be there for a short time and left his truck windows rolled down and the key in the ignition. However, Myers ended up staying to help Walton. Myers walked around the side of the house to do some work. About two minutes later, Walton told Myers that Myers's truck was being stolen. Myers ran to the front of the house and saw that his truck was gone. He jumped into the bed of Walton's pickup truck, and Walton backed out of the driveway. They drove through the neighborhood, looking for Myers's truck.

Myers testified that he and Walton spotted the truck and that Walton caught up to it. Myers grabbed a tire iron out of Walton's truck bed and ran up to the driver's window of his truck. He said the driver, who was the appellant, "stepped on the gas and took off." Myers put his arm into the bed of his truck and held on, and his truck hit a vehicle. Myers managed to pull himself into the bed of his truck as the appellant drove away from the wreck. He said that the appellant was "flying down the road," that he was scared, and that he ducked down. He started yelling for the appellant to stop the truck, and the appellant finally pulled over. The appellant tried to get out of the truck's passenger door, but the door was locked. Myers said he got out of the truck bed, went to the passenger door, "popped the lock," and opened the door. Myers said that the appellant got out, that he hit the appellant with a shovel, and that the appellant "took off running across the street" where a bus was stopped. The appellant did not have a cane and did not have any trouble running. The appellant got onto the bus, and Myers and Walton got into their trucks and returned to the house on North Parkway. When they arrived, the police were there. A man driving a white van also arrived.

Myers testified that the police showed him a photograph array on August 27, 2008, and that he identified the appellant as the man who stole his truck. He also identified the appellant in court and said he was "positive" the appellant took his truck on July 25, 2008. He acknowledged that he testified at the appellant's preliminary hearing and that he did not mention at the hearing that he hit the appellant with a shovel. He said he did not testify about hitting the appellant because he was afraid he would get into trouble. He acknowledged having prior convictions for statutory rape, misdemeanor theft, felony theft, and fraudulent use of a credit card.

-3-

On cross-examination, Myers testified that when he and Walton caught up to his truck, a white minivan also was there. Myers's truck and the minivan were facing the same direction, and the appellant appeared to be talking to someone in the minivan. Myers jumped onto the back of his truck, and the appellant drove away. Myers said that the front driver's side of his truck struck the minivan and that his truck was "wedged" between the minivan on the left and a pole on the right. Myers's truck continued traveling forward and pushed the minivan into the intersection. The appellant drove Myers's truck away from the wreck and continued driving for seven or eight minutes. The appellant stopped in front of the Veterans Affairs (VA) Hospital. When the appellant got out of the truck, Myers swung the shovel like a baseball bat and hit the appellant on the back of the head. He did not hit the appellant at the scene of the wreck. He saw the appellant get onto the bus but did not see anyone talking to the appellant at the bus stop.

James Walton testified that in July 2008, he worked as a cable installer for The Cable Guys and used his personal truck, a 1994 Chevrolet S-10 pickup, for his work. On July 25, 2008, Walton was installing cable at a home on North Parkway. Christopher Myers also was present, and someone stole Myers's truck. Walton and Myers drove around the neighborhood and found the truck behind a small van on Bellevue Avenue. Walton pulled up to Myers's truck, and Myers climbed into the bed. The man driving Myers's truck tried to drive away, hit the van, and pushed the van out of the way. Myers's truck also struck a pole and turned onto Jefferson Avenue. Walton followed Myers's truck, which stopped at the intersection with Pauline Street. Walton and Myers yelled for the driver to get out. Walton said that he got within four feet of the driver and that he was "[v]ery certain" the driver was the appellant.

On cross-examination, Walton testified that the small van was in the left turn lane at the intersection of Bellevue and Jefferson Avenues and was preparing to turn left. Myers got out of Walton's truck bed and approached the stolen truck. Walton did not see Myers carrying a tire iron. As the appellant pulled away from the intersection, Myers jumped onto the back bumper of his truck and pulled himself into the bed. The front driver's side of Myers's truck hit and dented the rear quarter panel on the van, and the right side of Myers's truck hit the pole. The appellant did not get out of Myers's truck at that time and turned onto Jefferson Avenue, pushing the van ten to twenty feet into the intersection. The appellant stopped Myers's truck in front of the VA hospital, and Myers yelled for the appellant to get out. The appellant got out on the passenger side, and Myers grabbed a shovel out of the back of his truck and hit the appellant on the back of the head. The appellant ran away, and Myers and Walton returned to the house on North Parkway.

Stanley Freeman, the appellant's cousin, testified for the appellant that he had known the appellant all of his life, that they were members of the same church, and that he would

not lie for the appellant. In early 2008, the appellant lived with Freeman for a couple of weeks. The appellant went to live with Freeman's brother in Millington, but Freeman continued to see the appellant regularly. Freeman said the appellant took medication for heart trouble and arthritis and used a cane to walk. The appellant used the cane while he was living with Freeman and still used the cane daily. Shortly before this incident, the appellant began receiving disability payments. Freeman said that the appellant could not run or jog and that the appellant would have been unable to run from the Bellevue/Jefferson intersection to the VA Hospital. The appellant never told Freeman that he got hit on the head with a shovel and never complained of head injuries. On cross-examination, Freeman testified that the appellant was not living with him at the time of this incident and that the appellant did not have a driver's license or a car.

The jury convicted the appellant of theft of property valued one thousand dollars or more but less than ten thousand dollars, a Class D felony. After a sentencing hearing, the trial court sentenced him as a Range III, career offender to twelve years in confinement.

## II. Analysis

The appellant claims that the evidence is insufficient to support his conviction for theft because Antonio Suggs's testimony conflicts with the testimony of Christopher Myers and James Walton. The State claims that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. See id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Theft of property occurs when someone, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's

effective consent. Tenn. Code Ann. § 39-14-103. A theft is "[a] Class D felony if the value of the property or services obtained is one thousand dollars ($1,000) or more but less than ten thousand dollars ($10,000)." Tenn. Code Ann. § 39-14-105(3).

Taken in the light most favorable to the State, the evidence shows that the appellant took Myers's truck, which was parked at a home on North Parkway. The appellant drove the truck on Bellevue Avenue, and Myers and Walton caught up with him at the intersection with Jefferson Avenue. Myers, who was riding in the bed of Walton's truck, jumped out and approached the appellant, who was still sitting in Myers's truck. The appellant tried to get away by turning Myers's truck onto Jefferson Avenue. In the process, the appellant hit Antonio Suggs's van, which was stopped in front of Myers's truck. The appellant drove Myers's truck between Suggs's van and a pole, and Myers held onto the bed of his truck and climbed into it. The appellant turned right onto Jefferson Avenue, drove along Jefferson, and stopped in front of the VA Hospital. Although the sequence of events described by Suggs differed from the sequence of events described by Myers and Walton, the events themselves were very similar. For example, all three of the witnesses testified that the appellant ran into Suggs's van, that the appellant pushed the van into the intersection, that Myers was in the bed of a truck, and that Myers hit the appellant on the back of the head with a shovel. Suggs and Myers also said the appellant ran from the scene and got onto a bus. Suggs, who had known the appellant for ten to twelve years, immediately recognized the appellant on July 25, 2008, as the driver of Myers's truck, and Myers identified the appellant from a photograph array about one month after the incident. Suggs, Myers, and Walton identified the appellant in court as the driver. The jury heard the conflicts in the testimony and resolved those conflicts in favor of the State. The evidence is sufficient to support the appellant's conviction.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE