# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 30, 2011 Session

## STATE OF TENNESSEE v. ROBERT WHITE

**Appeal from the Criminal Court for Hamilton County**
**No. 266057      Rebecca J. Stern, Judge**

---

**No. E2010-02238-CCA-R3-CD - Filed November 2, 2011**

---

The defendant, Robert White, appeals his conviction of second offense driving under the influence, *see* T.C.A. § 55-10-401(a)(1); -403(a)(1)(A)(iv), arguing that the evidence was insufficient to support his conviction in light of his acquittal on an alternative count also charging driving under the influence, *see id.* § 55-10-401(a)(2).  Because the seemingly inconsistent verdicts in this case do not render the evidence of the defendant's intoxication infirm or insufficient, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Lee Davis, Chattanooga, Tennessee, for the appellant, Robert White.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William H. Cox, III, District Attorney General; and Charlie Minor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's conviction of driving under the influence ("DUI") followed the stop of his vehicle on Lee Highway in Hamilton County just after midnight on April 12, 2007, for speeding.  Chattanooga Police Department Officer David Allen Huggins, Jr., testified that he was traveling northbound on Lee Highway and "running" "moving radar" when he observed the defendant's vehicle traveling southbound on Lee Highway at a speed of 58 miles per hour in a 40-miles-per-hour speed zone.  Officer Huggins activated his emergency equipment, and the defendant pulled his car over a short distance later.  Officer

Huggins testified that he smelled the odor of an alcoholic beverage emanating from the defendant's person and, as a result, asked the defendant to exit the vehicle. Once outside the vehicle, the defendant admitted consuming two beers at a nearby restaurant nearly two hours before the stop. Officer Huggins then asked the defendant to perform a series of field sobriety tests.

The encounter between Officer Huggins was recorded by Officer Huggins' dashboard camera, and the video recording was played for the jury. Officer Huggins had no independent recollection of the defendant's performance on the tests, but he stated that the video confirmed that the defendant erred during a counting test, swayed once during the walk-and-turn, and failed to follow directions on the one-legged stand. Based upon these observations, Officer Huggins concluded that the defendant was too impaired to drive and asked the defendant to submit to a test to determine his blood alcohol level. The defendant submitted to the test, and the results showed that the defendant's blood alcohol level was .10 percent.

During cross-examination, Officer Huggins acknowledged that the defendant was cooperative during the traffic stop and during the taking of his blood for blood alcohol testing more than an hour after the initial stop. He also admitted that nothing about the defendant's driving, other than his excessive speed, was erratic. He said that the defendant's speech was "[s]omewhat" slurred during the field sobriety test that required him to count backward from 79 to 46. Officer Huggins conceded that the defendant followed his instructions and had no problem communicating with him during the encounter. Officer Huggins described the video recording of the traffic stop as the "best evidence" of the defendant's condition on the night of the offense.

Special Agent and Forensic Toxicologist John W. Harrison performed blood alcohol testing on a sample of the defendant's blood he received from the Chattanooga Police Department. His testing revealed that the defendant's blood "contain[ed] ethyl alcohol at a level of point 10 grams percent."

At the conclusion of Agent Harrison's testimony, the State rested, and the defendant presented the testimony of expert witness Henry Alfred Spiller.

Mr. Spiller, director of the Kentucky Regional Poison Control Center, testified that, using information provided to him by the defendant, he was able to extrapolate the defendant's blood alcohol level at the time he was stopped by Officer Huggins. He explained that "just prior to getting in his car he had taken one beer and one shot" which resulted in 28 to 29 grams of alcohol . . . sitting in the stomach" and a blood alcohol level of "point 06 to point 07." Mr. Spiller said that the defendant's blood alcohol level would have continued

to rise during the delay between his arrest and the taking of his blood as the "last amount of alcohol" was absorbed into his body. Mr. Spiller said that the defendant's carriage and demeanor on the video recording confirmed his opinion that the defendant was "at an unimpaired level" when stopped by Officer Huggins.

During cross-examination, Mr. Spiller said that the defendant's statement to Officer Huggins that he had consumed two beers at approximately 10:30 p.m. could not be accurate because "[t]here's not enough alcohol in two beers" to cause the defendant to have a blood alcohol level of .10 percent. He stated that when confronted with the discrepancy, the defendant told Mr. Spiller that he had actually consumed five or six beers and one "shot" of alcohol. Mr. Spiller said that he based his calculations on his assumption that the defendant was drinking "American beers" in 12 ounce quantities and "an 80 proof spirit." Mr. Spiller recalled that the defendant also told him that he had not eaten for several hours before consuming the alcoholic beverages. Mr. Spiller acknowledged that his calculations were entirely dependent upon the information provided to him by the defendant.

At the conclusion of the trial, the jury returned a verdict finding the defendant guilty in count one of speeding; not guilty in count two of a violation of the light law; guilty in count three of DUI; and not guilty in count four of driving with a blood alcohol level greater than .08 percent, or DUI per se.

In this appeal, the defendant challenges only his conviction of DUI, contending that the evidence was insufficient to support that conviction because, he says, the jury's verdict of not guilty in count four necessarily includes a finding that the State failed to prove that his blood alcohol content was greater than .08 percent, which finding he claims bars his conviction of DUI. The State asserts that the evidence unequivocally supports the defendant's conviction of DUI and that the seemingly inconsistent verdicts have no effect on the remaining DUI conviction. We agree with the State.

We review the defendant's challenge to the sufficiency of the convicting evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact.

*Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

According to the defendant, this case presents an additional limitation on our review of the sufficiency of the trial evidence because his acquittal on the charge of DUI per se removes from our evidentiary calculations the results of his blood alcohol test. Acknowledging that an inconsistency of verdicts generally has no legal effect, the defendant nevertheless asserts that "this case is different from most in that the only meaningful evidence of impairment is from the results of the BAC test, an element of the DUI count on which he was acquitted." Well-established precedent, however, prevents this court from speculating as to the jury's rationale for convicting him of one count of DUI while acquitting him of another. Our supreme court explained,

> Consistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment. Therein lies the essential reasoning. An acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction. This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.

*Wiggins v. State*, 498 S.W.2d 92, 93-94 (Tenn. 1973).

This court considered an argument similar to that presented by the defendant in *State v. Kevin E. Glasgow*, No. M2006-02081-CCA-R3-CD (Tenn. Crim. App., Knoxville, Jan. 23, 2008). In *Kevin E. Glasgow*, Glasgow was originally charged with DUI and driving on a revoked license but convicted only of DUI. Arguing that his acquittal on the charge of driving on a revoked license "reflects that [the jury] did not find that he was driving," Glasgow contended that the State had failed to prove that he was driving, an essential element of DUI. *State v. Kevin E. Glasgow*, M2006-02081-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Knoxville, Jan. 23, 2008). This court rejected his argument and affirmed his conviction of DUI.

Attempting to discern the jury's motive for acquittal on the charge of driving with a blood alcohol concentration greater than .08 percent would be nothing more than

conjecture. Consequently, we reject the argument that the acquittal necessarily renders infirm the results of the blood alcohol test in this case.

That said, the proof adduced at trial was sufficient to support the conviction of driving under the influence. We acknowledge that the video recording of Officer Huggins' encounter with the defendant does not indicate that the defendant was intoxicated; however, other evidence that was inculpative accompanied the video recording. The defendant smelled of alcohol, admitted having consumed alcohol prior to driving his car, and performed poorly on field sobriety tests. The defendant told Mr. Spiller that he had drunk five or six beers and one "shot" of liquor before getting behind the wheel. Although the defendant quibbled with Officer Huggins' characterization of the defendant's speech, gait, and performance on the field sobriety tests, the jury heard the testimony and viewed the video recording. In this situation, we review all the evidence applying the usual sufficiency-of-the-evidence standard of review, *see* Tenn. R. App. P. 13(e); *Jackson*, 443 U.S. at 307; *Winters*, 137 S.W.3d at 654-55, and we do not reweigh the video evidence to determine whether it "was necessarily more reliable than the testimony of the witnesses testifying on behalf of the State," *see State v. Teddy Ray Mitchell*, __ S.W.3d. __, __, No. E2008-02672-SC-R11-CD, slip op. at 10 (Tenn. Mar. 21, 2011).

In addition to this evidence, blood alcohol testing established that the defendant's blood alcohol level at the time of testing was .10 percent. This evidence supports the jury's conclusion that the defendant was driving while "[u]nder the influence of an[] intoxicant . . . that impair[ed] [his] ability to safely operate a motor vehicle by depriving [him] of the clearness of mind and control of himself which he would otherwise possess." *See* T.C.A. § 55-10-401(a)(1).

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE