STATE of Tennessee, Petitioner,

v.

Billy Wayne CABBAGE, Respondent.

Supreme Court of Tennessee.

Oct. 10, 1978.

Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville (Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel), for petitioner.

Edward H. Stevens, University of Tennessee Legal Clinic, Knoxville, for respondent.

## OPINION

HARBISON, Justice.

Respondent, Billy Wayne Cabbage, was convicted of selling and delivering a Schedule II controlled substance in violation of T.C.A. § 52–1432(a)(1)(B) and received a sentence of not less than five nor more than seven years in the state penitentiary. Upon post-trial motion, the trial judge approved the verdict and overruled all assignments of error.

The Court of Criminal Appeals, however, reversed the conviction, finding that the evidence preponderated against the verdict, and remanded the case for a new trial. It found that the testimony of respondent and of an alibi witness who corroborated him outweighed the testimony of the undercover agent for the State, whose evidence was otherwise conceded to be sufficient to support the conviction.

With utmost deference to the Court of Criminal Appeals, our reading of the record, in light of fundamental and well-settled rules governing appellate review of criminal cases, leads us to a different conclusion. Further, as hereinafter discussed, the procedure followed by the Court of Criminal Appeals, in ordering a re-trial because it found the evidence to preponderate against the verdict, is no longer available under recent decisions emanating from the Supreme Court of the United States.

Other than a toxicologist who identified the tablets sold by respondent to the undercover agent as controlled substances, and a stipulation as to the chain of custody and delivery of the tablets to him, the only witness offered by the State was a 23-year-old undercover agent, Alan Taylor Smith. He testified positively that the respondent and one Robin Daniels sold him the drugs in question at a mobile home occupied by Daniels in the early afternoon of March 29, 1975. He testified in detail as to conversations he had with respondent and Daniels, and stated that respondent gave him without charge some blue "speed" tablets as samples to see if Smith might want to purchase some of these in the future.

Smith testified as to labeling and preserving the evidence, turning it over to narcotics officers of the Knoxville Police Department, and to the subsequent arrest of respondent in April. When recalled in rebuttal, he testified that he remembered seeing some boxes of shirts in the partially opened trunk of respondent's automobile as he was leaving the premises. He said that respondent asked Smith if the latter would like to purchase any of the shirts. Respondent told Smith that he was planning to leave the mobile home to make delivery of some of the shirts.

Respondent testified that he was engaged in selling irregular shirts which he purchased from a factory in Claiborne County. He testified that Robin Daniels was a relative by marriage and that he had visited the mobile home on a few occasions. On direct examination, he testified to a prior felony conviction in connection with worthless checks.

Respondent denied that he was at the Daniels trailer on March 29, 1975, denied making or participating in the drug sale, and testified that he did not know and had never talked to the undercover agent prior to the preliminary hearing following his arrest. He was arrested April 28, 1975, and the preliminary hearing was held in June. He was indicted on September 2.

Respondent said that he learned at the preliminary hearing that the alleged date of the drug sale with which he was charged was March 29, 1975. He testified that he then searched for records and found that he had been in Chattanooga, Tennessee on that date, and had had his automobile repaired there. He testified that he had left his father's home in Union County about 10 a.m. on the morning of March 29, 1975, drove to Chattanooga to sell shirts in that area,

and that he experienced car trouble shortly before reaching Chattanooga. He said that he arrived in that city about noon and took his car to Cox's Garage on Wilder Street for repairs. He testified that Mr. Jack King worked overtime on that Saturday afternoon to repair the automobile, and completed the work about 6:30 p. m. He stated that he then returned to his father's home in Union County. Because King had worked overtime and had stayed after the usual closing time for the garage, respondent had bought some Easter baskets for King to give to the latter's children, the date in question being Saturday immediately preceding Easter Sunday. He introduced in evidence a repair bill from Cox Auto Parts, in the amount of $90.52, bearing the date of March 29, 1975.

Respondent was corroborated in many respects by the testimony of Mr. Edward Jack King, the automobile mechanic employed by Cox Auto Parts in Chattanooga. This witness said that respondent arrived at the garage shortly before noon. The shop usually closed at about 3 p. m. on Saturday, but Mr. King remained late in order to repair respondent's automobile. He and respondent engaged in conversation while the repair work was being done, and he told respondent that he needed some money to buy things for his children for Easter. Respondent then went out and purchased two Easter baskets for the children.

The jury apparently rejected the alibi testimony offered on behalf of respondent, strong and persuasive though it may have appeared, and resolved the disputed factual issues in favor of the State. The jury was faced with the alternative of accepting the testimony of the undercover agent or that of respondent, a once-convicted felon, and his alibi witness. No other witnesses were produced by either side. The Court of Criminal Appeals found that the testimony of the alibi witness was totally unimpeached, was absolutely trustworthy, and that it was therefore of controlling significance.

In this regard, we are constrained to differ with that Court. There was one glaring discrepancy in the testimony of the alibi witness, which is pointed out to us by the State and may well have impressed the jury. This involved the testimony of Mr. King to the effect that respondent returned to King's shop at some time after the present criminal proceedings had been instituted. King testified that he recognized respondent. Both he and respondent said that this visit was in August or September, 1975. King testified:

"No, it was the same year, you know, when he first come back. *I didn't recognize the car at first when he first come back, and then I recognized the car. You know, I thought maybe he was having more car trouble. You know, I told him any time he was in town if he had more car trouble I'd be glad to work on it.*" (Emphasis supplied.)

Earlier he had also testified:

"Yes, sir. I didn't recognize the car when it first pulled in. *When I seen Mr. Cabbage, I recognized the car and him too.*" (Emphasis supplied.)

The principal difficulty with this testimony is that the Rambler automobile which respondent Cabbage was driving when he went to Chattanooga on March 29, 1975, was seized in April when Cabbage was arrested, confiscated by State officials and sold, so that Mr. Cabbage could not possibly have been driving the same automobile when he returned to Chattanooga to contact his alibi witness. Cabbage testified, "I never did get the car back."

This, in our opinion, is a circumstance which a finder of fact was entitled to consider, and which leads us to disagree with the conclusion of the Court of Criminal Appeals that the alibi testimony was totally and completely uncontradicted, credible, and worthy of belief in every respect.

Further, even if the alibi witness should not be totally discredited and the trier of fact should believe that respondent did in fact go to Chattanooga and did have his car repaired on March 29, the time sequences are such that the jury might conclude that respondent still made the drug sale as claimed by the State. In other words, they

might partially accredit respondent's proof and still convict.

Respondent said that it took about two hours for him to drive to Chattanooga. Smith testified that the drug sale occurred about 1:40 and that he left the mobile home at 1:55. Respondent was then about to leave to sell shirts.

Cabbage first said that when he got to the garage where King was employed,

"He worked on my car *a couple of hours,* yes sir." (Emphasis added.)

Both he and King said that the work was completed at about 6:00 or 6:30. King said that the repairs performed ordinarily could be done very quickly but he was delayed by having to send out for parts.

The jury could have believed that Cabbage arrived at the garage nearer to 4 p. m. than noon under the proof in the record, and this would have left time for the drug sale to have occurred as alleged.

■ We are unable to reconcile the disposition of this case by the Court of Criminal Appeals with the well-settled rule that all conflicts in testimony, upon a conviction in the trial court, are resolved in favor of the State, and that upon appeal the State is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom. The Court of Criminal Appeals recognized and quoted this rule, but, in our opinion, did not apply it here.

■ We are of the opinion that a classic question for the jury was presented by the testimony offered on behalf of the State and of the respondent in this case. The jury rejected the testimony of the respondent and accepted that of the State. The trial judge was in the second-best position to evaluate the trial testimony, since he, like the jury, saw and heard the witnesses and was able to form an impression of their credibility. He concurred in and approved the jury verdict.

It has been stated in innumerable cases:

"Neither this Court, nor the Court of Criminal Appeals, is free to re-evaluate the evidence as it pleases. A guilty ver-

dict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973).

In *Bolin v. State,* 219 Tenn. 4, 11, 405 S.W.2d 768 (1966), the Court said:

"This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court."

Respectfully, we reverse the decision of the Court of Criminal Appeals and reinstate the judgment of the trial court.

■ Because of a series of decisions rendered by the United States Supreme Court on June 14, 1978, however, we feel it appropriate to note that the previous procedure in this state under which trial and appellate courts could set· aside jury verdicts and award new trials simply upon the preponderance of the evidence, is no longer permissible. In the case of *Burks v. United States,* —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Supreme Court held that when a conviction is set aside for insufficiency of evidence, principles of double jeopardy prevent re-trial of the accused. In reaching this decision, the Court overruled a number of earlier cases to the contrary.

On the same date, the Court released an opinion in the case of *Greene v. Massey,* —— U.S. ——, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), and held that the standard announced in *Burks* was fully applicable to state criminal proceedings.

In *State v. Thompson,* 549 S.W.2d 943 (Tenn.1977), this Court discussed in some detail the rules of practice and procedure governing directed verdicts in criminal

cases.[1] The Court noted that because of the nature of criminal cases, there could not be a complete analogy between civil and criminal procedure as to the functions of judge and jury. Heretofore in Tennessee the "thirteenth juror" rule, familiar in civil cases, has also been applied in criminal cases.[2] Under that rule a trial judge could set aside a jury verdict upon grounds of preponderance alone and direct a retrial of the action without entering judgment of acquittal (or, in civil cases, a directed verdict). This procedure can no longer be followed in criminal cases, either at the trial or the appellate level.

The rule governing judgment of acquittal is contained in Rule 29, Tenn.R.Crim.P. as follows:

> "The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses."

█ Sufficiency or insufficiency to convict would henceforth seem to be the appropriate test or standard by which both trial and appellate courts must view the adequacy of the evidence, because of the double jeopardy principles enunciated in *Burks* and *Greene, supra.* In our opinion, however, the basic rules governing appellate review quoted above, in which conflicts in the evidence are resolved in favor of the State and the strongest legitimate view of the convicting evidence afforded it, are not affected and should continue to be applied in the review of criminal convictions.

Costs in this cause are taxed to the respondent.

COOPER, J., and DAVIS, Special Justice, concur.

HENRY, C. J., and FONES, J., dissent.

HENRY, Chief Justice, dissenting.

I respectfully dissent. In reversing the conviction, Judge Wayne Oliver, in a characteristically comprehensive, convincing and exhaustive opinion, held:

> The defendant was completely corroborated in every essential detail by Mr. King, the mechanic who repaired his car, including identification of the copy of the repair bill dated March 29, 1975, which he prepared himself when the job was completed. Neither the defendant nor Mr. King was impeached in any material aspect of their testimony. And most significant, that *repair bill (Exhibit 3) stands unshaken in this record.* (Emphasis supplied).

In my view, this record clearly and conclusively establishes it to be a fact that while an undercover agent was making a drug purchase in Knoxville, the respondent was at a garage in Chattanooga.

The majority seizes upon an infinitesimal, undeveloped and all but irrelevant discrepancy in the testimony of the alibi witness, viz his statement that he recognized respondent's car on an occasion subsequent to its having been confiscated.

The record does not disclose any significant consideration to this testimony during the trial. In fact, counsel did not even question respondent as to what car he acquired after the confiscation of his turquoise Rambler. The record contains no description of the replacement automobile. We can assume that it bore some similarity to his former automobile or we can assume that it bore none. It is difficult for me to understand the materiality of this discrepancy or its significance. The sole relevancy of the line of testimony containing this statement was to establish the identity of the respondent.

The next straw grasped by the majority is an isolated statement by respondent to the effect that King worked on his car a "couple of hours." From this the majority reasons that Cabbage could have "arrived

---

**1.** Now referred to as judgment of acquittal under the Rules of Criminal Procedure. Rule 29, Tenn.R.Crim.P.

**2.** *Helton v. State,* 547 S.W.2d 564 (Tenn.1977).

at the garage nearer to 4 p. m. than noon . . . and this would have left time for the drug sale to have occurred" in Knoxville.

This ignores the consistent testimony of respondent and King that respondent arrived at the garage around noon. It ignores the undisputed testimony that the garage closed at 3:00 p. m. on Saturdays, with the result that had respondent arrived at 4:00 p. m., the garage would have been closed. It ignores the proof that a significant portion of the some six or more hours was spent in endeavoring, on a Saturday afternoon, to obtain parts for a Rambler automobile.

The rejection of this documented alibi defense solely on the basis of the testimony of a paid informer, in a case where the arrest was made thirty days after the fact, and where admittedly respondent neither possessed nor sold the drugs listed in the indictment is disturbing.

I would affirm the unanimous decision of the Court of Criminal Appeals, and dismiss this prosecution.

I am authorized to state that Mr. Justice FONES concurs in this dissent.