IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1998 SESSION

FILED

September 22, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| STATE OF TENNESSEE, | ) | |
|---|---|---|
| | ) | |
| Appellee, | ) | No. 03C01-9711-CC-00489 |
| | ) | |
| | ) | Hawkins County |
| v. | ) | |
| | ) | Honorable James E. Beckner, Judge |
| | ) | |
| HENRY CLAYTON GILLIAM, | ) | (Driving under the influence) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Greg W. Eichelman
District Public Defender
    and
R. Russell Mattocks
Assistant Public Defender
1609 College Park Drive, Box 11
Morristown, TN 37813-1618

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
    and
Janis L. Turner
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

C. Berkeley Bell, Jr.
District Attorney General
109 S. Main Street, Suite 501
Greeneville, TN 37743
    and
John Douglas Godbee
Assistant District Attorney General
Main Street
Hawkins County Courthouse
Rogersville, TN 37857

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Henry Clayton Gilliam, appeals as of right from his conviction by a jury in the Hawkins County Criminal Court for driving under the influence, second offense, a Class A misdemeanor. The trial court sentenced the defendant to eleven months and twenty-nine days in the county jail, seventy-five percent to be served before release. It imposed a fine of one thousand five hundred and ten dollars. The defendant contends that the evidence is insufficient to support his conviction and his sentence is excessive. We affirm the judgment of conviction.

Katherine Burns testified that during the late hours of April 18, 1997, she heard a car pull into her driveway. She stated that she looked out the window and saw the car sitting in the driveway with its lights on and the motor running. She said that she waited approximately fifteen minutes for someone to come to the door and then called 9-1-1. She testified that an officer arrived approximately fifteen minutes later. She stated that the officer had to help the defendant out of the car. She testified that she heard the officer ask the defendant if he knew where he was and the defendant replied, "No." She said that she had not invited the defendant or anyone else to her home. Ms. Burns believed the defendant was intoxicated because the officer had to help the defendant out of the car and because the defendant's speech was slurred.

Officer Gerald Gibson of the Hawkins County Sheriff's Department testified that he responded to Ms. Burns' call at approximately 11:10 p.m. He said that when he arrived, a 1981 gold Toyota car was sitting in the driveway of the Burns' residence with the emergency brake on and the engine running. He stated that he walked up to the car and saw the defendant slumped over the steering wheel. He said he knocked on the window, but the defendant did not respond. Officer Gibson testified that he then opened the door and shook the defendant, but the defendant did not

2

respond. He said that he reached into the car, turned off the ignition, and turned off the headlights. He stated that the defendant awoke, and he asked him to get out of the car. Officer Gibson testified that the defendant mumbled, grumbled and refused to get out of the car. He said that he had to reach into the car, grab the defendant by the arm and pull him out of the car.

Officer Gibson testified that once the defendant was outside the car, he asked the defendant his name and asked for identification. He said that the defendant refused to tell him his name. He testified that the defendant was unstable on his feet and could not stand by himself. Officer Gibson testified that he asked the defendant if he knew where he was, and the defendant responded that he needed to speak to a detective because he had been kidnapped by the people who had killed a man and woman in Greeneville and had gotten out of jail. He said that the defendant told him that the people had forced him to drink blood and alcohol and take pills. Officer Gibson asked the defendant how the murderers got out of jail and kidnapped him, and the defendant had no response. He stated that the defendant knew that he was in a driveway but did not know whose and did not know the name of the road.

Officer Gibson stated that he smelled a strong odor of alcohol on the defendant. He also stated that the defendant's speech was slurred, his eyes were bloodshot, and his hair and clothes were in disarray. Officer Gibson testified that when he asked the defendant to walk to the police car, a scuffle between him and the defendant took place. He said that he then arrested the defendant for driving under the influence and took the defendant to the sheriff's department. He stated that he did not conduct any field sobriety tests because the defendant was uncooperative. Officer Gibson testified that when they arrived at the sheriff's department, the defendant refused to take a breathalyzer test and refused to sign forms reflecting that he refused

3

to take the test. Officer Gibson testified that there was no indication that the defendant had been kidnapped.

Jason Brake, formerly a jailer for the Hawkins County Sheriff's Department, testified that the defendant was unsteady on his feet at the jail. He said that he smelled a strong odor of alcohol on the defendant and that the defendant's eyes were bloodshot and his speech was slurred. Jailer Brake believed that the defendant was highly intoxicated. He said that the defendant told him that vampire aliens from Kentucky had abducted him from his home, forced him to drive his car for them, and forced him to drink blood before leaving him at an unknown residence. He stated that at the defendant's request, he filed a complaint on the defendant's behalf. Jailer Brake believed the defendant's claims to be ludicrous, and he said that no investigation of his claims took place.

The defendant testified that he had not drunk anything on the day of the offense and that he smelled like beer because he had been picking up beer cans from 8:00 a.m. to 7:00 p.m. He said that when he returned home, two men walked up to him and his son, asked his son for a cigarette, pulled a gun on them, and said, "Let's go." He stated that the men forced him and his son into the defendant's car and forced him to drive to Morristown and to buy beer and liquor. The defendant said that the men forced him to drink beer, take pills, and drink something that was red, although he was unsure whether it was blood. The defendant stated that he was afraid that the men would shoot him and his son. He said that he pulled into a driveway after telling the men that his chest was hurting because he had high blood pressure. He testified that one of the men hit him in the head with the gun, causing him to become unconscious. He said that he could not remember anything from that point until Officer Gibson awakened him. He stated that he did not know how long he had been passed out or where he was. The defendant testified that he tried to tell Officer Gibson what had

4

happened, but Officer Gibson would not listen.  He said that Officer Gibson was confused about who the defendant had said had kidnapped him and that he tried to explain.  On cross-examination, the defendant testified that when he pulled into the driveway, his son got out of the car and ran away as the men fired shots.  He said that he did not tell the police that his son had been kidnapped because his son had been able to escape.

Clayton Byington, the defendant's son, testified that he could not remember where he was or whether he was with the defendant on April 18, 1997.  He said that he did not remember anything about that day.  He conceded that he had discussed the case with the defense attorney and had told him a story similar to the defendant's version of the facts.  On cross-examination, Mr. Byington admitted that he had not been kidnapped.  He said that he had told the officers that he was not going to lie for the defendant.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction in that the state failed to disprove the testimony of the defendant recounting how he had been kidnapped and left in Ms. Burns' driveway.  Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  This means that we do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state.  See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Under this standard, we hold that the evidence is sufficient to convict the defendant of driving under the influence, second offense.

5

## II. SENTENCING

The defendant contends that the trial court erred in its application of enhancement and mitigating factors and that the trial court imposed an excessive sentence. He also argues that the trial court erred by denying probation. The state responds that the trial court properly sentenced the defendant. We agree.

The presentence report reflects that the then forty-four-year-old defendant dropped out of high school after completing the tenth grade. The defendant has a prior criminal history consisting of a conviction for driving under the influence and four convictions for public intoxication. The defendant reported that he had abused alcohol for thirty-four years. The presentence report reflects that the defendant was unemployed and was disabled due to problems with his heart, blood pressure and nerves.

In sentencing the defendant, the trial court considered the defendant's prior criminal history, noting that the defendant had four prior convictions for public intoxication. See T.C.A. § 40-35-114(1). It found no mitigating factors applicable. It said that enhancement factor (1) was given greater weight because it found that the defendant's testimony was untruthful and that the defendant had attempted to have his son testify falsely. The trial court stated that it denied probation because of the defendant's prior criminal history, his history of alcohol abuse, his poor employment record, and his blatantly false testimony. The court considered the sentencing purposes and principles.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d). The "presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court

6

considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to T.C.A. § 40-35-401(d) and -402(d) note, the burden is now on the appealing party to show that the sentencing is improper. We note that there is no presumptive minimum sentence provided by law for misdemeanor sentencing. See, e.g., State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, the sentence must comply with the misdemeanor sentencing requirements of the Criminal Sentencing Reform Act of 1989. See State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995).

In this case, the record demonstrates that the trial court followed the requirements of the Sentencing Act and exercised solid judgment in its determinations. The defendant has failed to show that the sentence imposed by the trial court is improper.

In consideration of the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
Joe G. Riley, Judge

_____
Thomas T. Woodall, Judge

7