IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2011

## STATE OF TENNESSEE v. GARY REEVES

**Appeal from the Circuit Court for Madison County**
**No. 10-317     Donald H. Allen, Judge**

---

**No. W2010-02583-CCA-R3-CD  - Filed November 17, 2011**

---

The defendant, Gary Reeves, appeals his Madison County Circuit Court convictions of theft of property valued at more than $1,000 but less than $10,000 and criminal trespass, challenging the sufficiency of the convicting evidence. Because sufficient evidence supports both convictions, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Roger A. Staton, Jackson, Tennessee, for the appellant, Gary Reeves.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The convictions in this case relate to the taking of several items from the property of M&M Plumbing on November 4 and 5, 2009. Surveillance video from the property showed a black male and a black female loading items from the M&M Plumbing property into a small, green pickup truck. Saundra Peterson, the defendant's niece and owner of the truck, later sold the items for scrap at two different recycling businesses.

Jim Morrison, owner of M&M Plumbing, testified that he and his wife viewed the surveillance video after his wife noticed that several items were missing from the business property. Mr. Morrison said that he did not recognize either of the individuals that

took the items and that no one had permission to take any item from the property. The Morrisons compiled a list of the missing items along with the replacement cost for each item:

| ITEM | REPLACEMENT COST |
| --- | --- |
| Running Boards | $120.00 |
| Fuel Tank | $150.00 |
| Two Section Drive Shaft | $300.00 |
| Center Bearing | $30.00 |
| Steering Section | $150.00 |
| Brake Booster | $300.00 |
| Alternator | $135.00 |
| Fan and Motor | $850.00 |
| Steel Work Table | $650.00 |
| Valves | $500.00 |
| Miscellaneous Steel Racks | $405.00 |
| Steel Pipes | $300.00 |

Mr. Morrison testified that although the property was not fenced and bore no signage indicating that it belonged to M&M, he had placed "No Trespassing" and "Private Property" signs on the barn on the property. In addition, Mr. Morrison had mounted surveillance cameras on the barn and in some nearby trees. He said that the property could be accessed by foot from several directions but by vehicle only via the driveway.

During cross-examination, Mr. Morrison acknowledged that many of the items taken were lying on the ground and that some of them were overgrown with weeds. He stated that some of the items were located inside a truck on the property and that, although the truck was not operational at the time of the offenses, he was in the process of repairing it. Mr. Morrison maintained that he did not intend to scrap the truck or any of the items taken from the property.

Linda Long, part-owner of Dudley's Recycling, testified that Saundra Peterson brought two loads of scrap metal to the business on November 5, 2009. Ms. Long said that

Ms. Peterson was paid $42 for the first load, which weighed 840 pounds, and $52.80 for the second load, which weighed 1,320 pounds.

Saundra Peterson testified that the defendant, who is her uncle, asked to borrow her teal green 1993 Mazda pickup truck "to get some scraps." She did not loan him the truck because he did not have a driver's license, but she agreed to drive him after he promised to split the proceeds with her. Ms. Peterson said that the defendant told her an "old white man" had given him permission to take the items and insisted that she did not know the items belonged to M&M. She testified that the defendant directed her to property adjacent to the West Bemis Baptist Church. There, they began taking items and loading them into her truck. She said they went to the property a total of three times to obtain items to scrap. Ms. Peterson said that they took some of the items to Dudley's and some of the items to Hutcherson's for payment. She said they received at total of $215 for all the items, and she took half the money.

Ms. Peterson said that nothing on the property indicated that it or the items belonged to a business and that the items they took were not "good stuff" but rather "scraps in a ditch." Ms. Peterson testified that she thought the property belonged to the church but admitted that, in any event, she knew that the property did not belong to her or the defendant.

Janet Fuller, the defendant's girlfriend, testified on behalf of the defendant that it was Ms. Peterson who asked the defendant to help her pick up "scrap that the old white man had given her." Ms. Fuller said that Ms. Peterson's son, and not the defendant, had accompanied Ms. Peterson on a second trip to pick up scraps at the property.

At the conclusion of the trial, the jury convicted the defendant as charged.

In this appeal, the defendant challenges the sufficiency of the convicting evidence. We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are

resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"A person commits criminal trespass if the person enters or remains on property, or any portion of property, without the consent of the owner." T.C.A. § 39-14-405(a) (2006). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). Theft of property valued at $1,000 or more but less than $10,000 is a Class D felony. *Id.* § 39-14-105(3). Value is "[t]he fair market value of the property or service at the time and place of the offense; or . . . [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." *Id.* § 39-11-106(36)(A).

Tennessee Rule of Evidence 701(b) permits the owner of personal property to testify about the value of that property, *see* Tenn. R. Evid. 701(b) ("A witness may testify to the value of the witness's own property or services."); *Reaves v. State*, 523 S.W.2d 218, 220 (Tenn. Crim. App. 1975), including the fair market value at the time of the offense or the replacement cost, *see State v. Alton Tappan*, No. W2006-00168-CCA-R3-CD (Tenn. Crim. App., Jackson, May 29, 2007), *perm. app denied* (Tenn. Aug. 20, 2007); *State v. Gene Allan Logue*, No. W1999-01795-CCA-R3-CD (Tenn. Crim. App., Jackson, Dec. 15, 2000).

Here, the evidence established that the defendant went onto the property on two occasions without the permission of the owners and stole more than $1,000 worth of metal he and Ms. Peterson later sold for scrap. Mr. Morrison testified that neither the defendant nor Ms. Peterson had permission to enter his property, which was marked with "No Trespassing" and "Private Property" signs, or to take any items from the property. Ms. Peterson testified that the defendant solicited her help in taking several items from the M&M Property to be sold for scrap. Although Ms. Peterson insisted that she did not know the property belonged to M&M, she admitted that she knew the property did not belong to her. The defendant, she said, led her to believe that he had been given permission to take the items. The two then sold the items for just over $200. The scrap value of the items has little bearing on either the fair market value or the replacement value. Mr. Morrison testified that the replacement value of the items exceeded $3,000. The jury accredited Mr. Morrison's valuation, as was its prerogative. *See State v. Hamm*, 611 S.W.2d 826, 828-29 (Tenn. 1981) (holding that it is up to the jury to determine the value of the items stolen). Under these circumstances, the evidence was sufficient to support the defendant's convictions.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE