# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 6, 2011

## STATE OF TENNESSEE v. BRANDON NEWBY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-08149     J. Robert Carter, Judge**

---

**No. W2011-00210-CCA-R3-CD  - Filed February 13, 2012**

---

A Shelby County Criminal Court Jury convicted the appellant, Brandon Newby, of carjacking and evading arrest, and the trial court sentenced him to concurrent sentences of eight years and eleven months, twenty-nine days, respectively.  On appeal, the appellant contends that the evidence is insufficient to support the convictions.  Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Barry W. Kuhn and Stephen C. Bush (on appeal) and Amy Mayne and Nigel Lewis (at trial), Memphis, Tennessee, for the appellant, Brandon Newby.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In November 2009, the Shelby County Grand Jury indicted the appellant for especially aggravated kidnapping, a Class A felony; carjacking, a Class B felony; employing a firearm during the commission of a dangerous felony, a Class C felony; and evading arrest, a Class A misdemeanor.  At trial, thirty-two-year-old Michael Euell testified that about 5:15 a.m. on

July 19, 2009, he was driving home and stopped at a gas station at the intersection of Winchester and Riverdale Roads in Memphis. He was going to put gasoline in his silver Chevrolet Cavalier. As he was standing at the pump and about to pay for the gas, two African-American men approached him. He said the first man was about six feet tall, was clean shaven, and had a low haircut. Euell said the second man was about five feet, six inches tall and had "twisties" in his hair. The men told Euell to give them his car keys and wallet and get into the Cavalier. Euell said he was "stunned," did exactly what they told him, and got into the backseat of his car. The taller man had a gun, got into the backseat with Euell, and held the gun to Euell's side. The shorter man sat in the driver's seat, drove the car away from the gas station, and turned onto the interstate. Euell thought he was going to be killed. However, the shorter man drove into a neighborhood, stopped, and let Euell get out of the car. Euell walked to a convenience store and telephoned the police. He said that he later met with a police officer at the sheriff's department and that he picked out the appellant's photograph from a photograph array. Euell identified the appellant at the sheriff's department and in court as the driver.

On cross-examination, Euell testified that it was "kind of dark" when the two men approached him but that the gas station was "lit up." He said that his gas light was on inside the car when he pulled up to the gas pump and that he was unable to put gas in the car before the two men approached him. He said that his car probably would have traveled fifty miles before it ran out of gas and that he was in the car with the men for about fifteen or twenty minutes. He said he did not remember telling the police that he paid for the gasoline inside the convenience store or that he was walking out of the store when the two men approached him. He said he also did not remember telling the police that he rode with the men for one and one-half hours before they let him go. He denied meeting the appellant at a nightclub in the early morning hours of July 19, leaving the club with the appellant, and allowing the appellant to drive his car. Euell looked at two photograph arrays, one for the driver and one for the man with the gun, but he could not identify the man with the gun. He stated that his cellular telephone, wallet, and car were taken during the incident.

Officer Kevin Barrett of the Memphis Police Department testified that about 3:00 a.m. on July 27, 2009, he was dispatched to a disturbance call on Rayner Street. He said that while he was en route, he saw a silver Chevrolet Cavalier parked in the middle of the road, "kind of blocking traffic." He also saw an African-American male running between houses. The man got into the Cavalier, and Officer Barrett turned on his marked patrol car's blue lights and siren to initiate a traffic stop. He said the Cavalier "took off" at a high rate of speed and traveled through a red traffic light. Officer Barrett pursued the car, ran the car's license tag, and learned it had been stolen during a carjacking. The car stopped, and the driver got out while the car was still rolling. Officer Barrett said that the pursuit lasted no more than one minute and that he saw the driver's face when the driver turned back to look

at him. He stated that the driver had "twists or dreads" in his hair and that he chased the driver on foot. At some point, a canine unit arrived. The canine unit and Officer Barrett found the driver, who was the appellant, in a bush beside a house. The appellant refused to come out of the bush, so a police dog approached him. The appellant hit the dog in the face with a brick, and the dog bit the appellant on the leg. The appellant complied with police officers' commands, and the officers arrested him. Officer Barrett said that the appellant did not have a gun and that he did not find a gun in the Cavalier. He said the appellant was acting erratically, was yelling, and said, "[I]t wasn't me."

Deputy Sheriff Forrest Bartlett of the Shelby County Sheriff's Department testified that he was assigned to investigate Michael Euell's case. After officers apprehended the appellant, the appellant was developed as a suspect in the carjacking. Deputy Bartlett contacted Euell and prepared a photograph array. Euell came to the sheriff's department and looked at the array.

On cross-examination, Deputy Bartlett testified that he met with Euell on July 27, after the appellant's arrest, and took a statement from him. Euell's car was dusted for fingerprints, but no prints were found. Police officers did not find any of Euell's property on the appellant's person.

On redirect examination, Deputy Bartlett testified that an offense report was prepared on the day of the carjacking and that Euell had described one of the carjackers as having "twists in his hair," which was a unique characteristic. After the appellant's arrest, Deputy Bartlett looked at the appellant and compared the appellant's physical appearance to the description in the report. The appellant matched the description.

The then twenty-year-old appellant testified on his own behalf that on the morning of July 19, 2009, he walked to his cousin's house and babysat while his cousin went to work at McDonalds. He said he stayed at his cousin's house, "waiting for "[his]" other little [cousin's] daycare bus to show up." The bus picked up the child, and the appellant started walking home. While he was walking, Michael Euell walked up to him and asked if he needed a ride. The appellant and Euell walked to Euell's car, and the appellant asked to drive the car. Euell allowed the appellant to drive the Cavalier, and they decided to go Euell's friend's house. The appellant said that during the drive, Euell told him that Euell was "gay." He said that Euell also looked at him "with a little smirk on his face." The appellant stopped the Cavalier in front of a house and told Euell that the house belonged to the appellant's aunt, which was not true. He told Euell to get out of the Cavalier and walk to the home's front door. The appellant said that when Euell got out of the car, he drove away because he thought Euell wanted him to "do something" with Euell.

The appellant testified that on July 27, he was driving the Cavalier. A police officer turned on his patrol car's blue lights, so the appellant stopped the car. He said the officer "backed off," so the appellant "started back driving." The officer turned on his patrol car's blue lights again but did not turn on the siren. The patrol car caught up with the Cavalier, and the appellant jumped out of the Cavalier. The officer later found the appellant at the corner of a house. The appellant said he did not hit the police dog with a brick but acknowledged having a prior conviction for theft.

The jury convicted the appellant as charged for carjacking and evading arrest. However, the jury acquitted him of especially aggravated kidnapping and employing a firearm during the commission of a dangerous felony. After a sentencing hearing, the trial court sentenced the appellant to concurrent sentences of eight years for the carjacking conviction and eleven months, twenty-nine days for the evading arrest conviction.

## II. Analysis

The appellant contends that the evidence is insufficient to support the convictions. Regarding the carjacking conviction, he argues that he did not deprive the victim of the victim's motor vehicle by the use of a deadly weapon, force, or intimidation. He asserts that he asked the victim to get out of the car when he learned the victim was "gay" and that the victim complied. Regarding the evading arrest conviction, the appellant contends that he did not know the officer was trying to stop him. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. See id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As charged in the indictment, carjacking is "the intentional or knowing taking of a motor vehicle from the possession of another by use of . . . [f]orce or intimidation." Tenn. Code Ann. § 39-13-404(a)(2). The misdemeanor evading arrest statute provides that "it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person . . . [k]nows the officer is attempting to arrest the person." Tenn. Code Ann. § 39-16-603(a)(1)(A).

Taken in the light most favorable to the State, the evidence shows that two men, one of whom was the appellant, approached Euell, demanded his wallet and keys, and told him to get into his car. The appellant sat in the driver's seat of the car while the other man got into the backseat with Euell and held a gun to Euell's side. Although the appellant claimed that Euell offered to give him a ride, that Euell allowed him to drive Euell's car, that he learned Euell was a homosexual during the ride, and that he asked Euell to get out of the car, the jury obviously accredited Euell's version of the events. The jury, not this court, was in the best position to judge the credibility of the witnesses. As to the appellant's evading arrest conviction, the evidence shows that Officer Barrett turned on his patrol car's blue lights and siren, that the appellant sped away in the Cavalier, and that the appellant traveled through a red traffic light. The officer pursued the Cavalier for less than one minute. The appellant got out, fled on foot, and hid in a bush. The appellant obviously knew the officer was pursuing him to make an arrest. The evidence is sufficient to support the appellant's convictions.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE