IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2016

**STATE OF TENNESSEE v. LESLIE KENNEDY**

**Appeal from the Criminal Court for Shelby County**
**No.  14-02446     W. Mark Ward, Judge**

**No. W2015-00458-CCA-R3-CD  -  Filed February 22, 2016**

The defendant, Leslie Kennedy, appeals her Shelby County Criminal Court jury convictions of second offense driving under the influence and reckless driving, claiming that the evidence was insufficient to support her convictions.  Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Harry E. Sayle III (on appeal), and Trent Hall (at trial), Assistant District Public Defenders, for the appellant, Leslie Kennedy.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In May 2014, the Shelby County Criminal Court grand jury charged the defendant with alternative counts of driving under the influence of an intoxicant ("DUI") and driving with a blood alcohol concentration of .08 percent or more ("DUI per se"), as well as reckless driving.  The trial court conducted a jury trial in December 2014.

The State's proof at trial showed that on the evening of November 16, 2013, shortly after 7:00 p.m., Caleb Hall was driving his girlfriend to the movie theater. Mr. Hall was "sitting about three cars deep at the stop sign" on Macon Road when a Mazda vehicle "took a wide right turn into the front left of [Mr. Hall's] vehicle, kind of went over the hood."  Following the collision, Mr. Hall's girlfriend called the police

while Mr. Hall got of his vehicle. A woman later identified as the defendant "stumbled" toward Mr. Hall. Mr. Hall described his initial interaction with the defendant as follows:

> We were trying to get information from her, she couldn't really talk well. Couldn't really understand what she was saying. She went back to her car, ended up coming back with an owner's manual instead of insurance. I got her – I was taking pictures and stuff while she was doing that of the wreck and the license plate and everything.

Mr. Hall detected a "strong" smell of an alcoholic beverage emanating from the defendant and observed that the defendant was unable to stand or walk very well.

While Mr. Hall was waiting for law enforcement officers to arrive on the scene, he called a friend whom he was planning to meet at the theater. His friend decided to come to the scene of the accident to wait with Mr. Hall and his girlfriend. Shortly after Mr. Hall's friend arrived at the scene, the defendant drove away from the scene. Mr. Hall testified that his vehicle sustained significant damage to the front bumper, a headlight, and the front left quarter panel but that neither he nor his girlfriend sustained any injuries.

Officer Elizabeth Calhoun with the Memphis Police Department ("MPD") responded to the scene of the accident on November 16 at approximately 8:00 p.m. After Mr. Hall provided her with a photograph of the defendant's license plate, Officer Calhoun broadcast the plate number over the police radio.

MPD Officer Tyrone Edwards responded to the call of the defendant's vehicle's involvement in a hit-and-run and proceeded to the defendant's address on Nutbush Place. When Officer Edwards arrived, he found the defendant sitting in the driver's seat of her vehicle with the motor running while "fumbling through her purse." Officer Edwards observed that the defendant's vehicle "had been wrecked" and "had a portion of another vehicle still attached to it." After watching the defendant rifle through her handbag for approximately 15 seconds, Officer Edwards knocked on the driver's side window. The defendant "look[ed] up at [Officer Edwards] and she appeared disoriented and she went back to looking inside her purse." Officer Edwards then slowly opened the driver's side door and eventually convinced the defendant to step out of the vehicle. Officer Edwards found the defendant to be "obviously very impaired," with "the mouth odor of intoxicants coming off of her." After Officer Edwards placed handcuffs on the defendant, she attempted "to break out of the cuffs" and "kick the windows" of the patrol car.

When Officer Edwards returned the defendant to the scene of the accident, Mr. Hall identified her as the person who had struck his vehicle and had fled the scene. Officer Calhoun observed the defendant to be "very intoxicated" with "a strong odor of alcohol on her" and with "glassy eyes, bloodshot, watery eyes and so forth and kind of stumbling a bit." Officer Calhoun transported the defendant to a nearby gas station where MPD Officer Lionel Brown with the DUI unit began DUI field testing at approximately 11:55 p.m. Officer Brown detected a "faint" odor of an alcoholic beverage on the defendant's person and noticed that the defendant's eyes were watery and bloodshot.

Officer Brown administered both the walk-and-turn and the one-leg-stand field sobriety tests on the defendant. On both tests, the defendant repeatedly interrupted Officer Edwards during the instruction phase. On the walk-and-turn test, the defendant began the test too soon, raised her arms for balance, stepped off the line, failed to touch heel-to-toe, turned incorrectly, and failed to walk the correct number of steps. On the one-leg-stand test, the defendant swayed and raised her arms for balance. Officer Brown then obtained the defendant's consent for a breathalyzer test, and he administered the test at approximately 1:00 a.m. on November 17. The test results showed that the defendant had a breath-alcohol concentration of 0.106 percent. Through Officer Brown's testimony, the State introduced into evidence the video recording of the field sobriety tests and the breath-alcohol tests.

MPD Officer Robert Galison testified that the breath-alcohol test equipment used by the defendant had been calibrated on October 31, 2013, and that it was functioning properly. Special Agent and forensic scientist Robert Marshall with the Tennessee Bureau of Investigation testified as an expert in the field of forensic sciences pertaining to the breath-alcohol machines and the effects of toxicology that, at the time the defendant took the breath-alcohol test, her blood alcohol content had decreased due to the amount of time she had been in police custody.

With this evidence, the State rested. Following a motion for judgments of acquittal and a *Momon* colloquy, the defendant elected to testify.

The defendant testified that, on November 16, she picked up food from a restaurant and that as she made a right turn onto Macon Road, the driver's side of her vehicle struck Mr. Hall's vehicle. The defendant stated that she immediately exchanged insurance information with Mr. Hall and that a police officer on the scene instructed her to move her vehicle and "go home" because she was blocking traffic. The defendant then drove to her house because "[t]here was no damage to [her] car whatsoever, not even a dent." The defendant testified that police officers were parked at her house when she arrived and that she "immediately" got out of her car because she was concerned

- 3 -

something had happened to her elderly mother.  The defendant denied that she had been drinking alcohol or taking any narcotics prior to the collision.

Based on this evidence, the jury convicted the defendant as charged of DUI, DUI per se, and reckless driving.  The State then introduced into evidence a certified copy of the defendant's 2009 conviction of DUI, and, following subsequent deliberations, the jury found the defendant guilty of second offense DUI and DUI per se.  Following a sentencing hearing, the trial court merged the DUI convictions and imposed a sentence of 11 months, 29 days, to be served concurrently with a six-month sentence for the reckless driving conviction.

Following the denial of her timely motion for new trial, the defendant filed a timely notice of appeal.  In this appeal, the defendant contends only that the evidence is insufficient to support her convictions.  We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003).  This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact.  *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact.  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.  *Id.*

As charged in this case,

It is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while:

(1) Under the influence of any intoxicant . . . that impairs the driver's ability to safely operate a motor vehicle by depriving

the driver of the clearness of mind and control of oneself which the driver would otherwise possess;

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more; . . . .

T.C.A. § 55-10-401(a)(1)-(2). A person commits the offense of reckless driving "who drives any vehicle in willful or wanton disregard for the safety of persons or property." T.C.A. § 55-10-205(a).

In the instant case, the proof at trial established that the defendant made a wide right turn directly into the driver's side of Mr. Hall's vehicle, which was stopped at a stop sign, and "went over the hood" of Mr. Hall's vehicle, causing significant damage to Mr. Hall's vehicle. Mr. Hall noticed a "strong" smell of an alcoholic beverage on the defendant when he spoke with her, and he noticed that she was confused, somewhat incoherent, and unsteady on her feet. The defendant then left the scene of the accident before law enforcement officers arrived. Officer Edwards proceeded to the defendant's house and found her seated in the driver's seat of her vehicle with the motor still running. Officer Edwards observed the defendant to be "obviously very impaired," with "the mouth odor of intoxicants coming off of her," and he noticed that her vehicle "had been wrecked" and "had a portion of another vehicle still attached to it." When Officer Edwards returned the defendant to the scene of the collision, Officer Calhoun detected "a strong odor of alcohol" on the defendant and noticed her "glassy eyes, bloodshot, watery eyes and so forth and [that she was] kind of stumbling a bit." A couple of hours later, Officer Brown administered field sobriety tests to the defendant, both of which the defendant failed. The defendant then agreed to submit to a breath-alcohol test, which revealed her alcohol concentration to be 0.106 percent, more than two-tenths above the legal limit. Although the defendant denied that she had been drinking on the day of the collision, denied that her vehicle had sustained any damage, and insisted that an officer at the scene had instructed her to return home, such matters of witness credibility and evidentiary weight are within the exclusive province of the trier of fact, and this court will not reweigh such evidence. *See Dorantes*, 331 S.W.3d at 379.

Viewing this evidence in the light most favorable to the prosecution, we find that the evidence adduced at trial overwhelmingly established the defendant's convictions of DUI, DUI per se, and reckless driving.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE